UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| CYRIL JONES, ET AL. | CIVIL ACTION |
|---|---|
| VERSUS | NO. 15-742 |
| ALLSTATE INSURANCE CO., ET AL. | SECTION "N" (3) |

## ORDER AND REASONS

Presently before the Court are several motions relative to recovery of attorney fees. See Rec. Docs. 68, 119, 134, 144 and 150.

## BACKGROUND

Following settlement of the plaintiffs' claims against the defendants, and the cross-claim between Defendants Allstate Insurance Company and Travelers Property Casualty Company of America, only the attorney fees dispute between Intervenor Silvestri & Massicot, LLC (S&M) and the Law Offices of John Paul Massicot, LLC ("JPM") remains unresolved in this matter. Specifically, S&M and JPM disagree regarding the proper division amongst themselves amounts of the attorney fees deposited into the registry of the Court by Allstate and Travelers.

The now settled claims arose from a motor vehicle accident that occurred on March 17, 2014, when vehicles driven by the now deceased original plaintiff, Cyril Jones, and Defendant Horace Spencer, collided. Shortly after the accident, Attorney John Paul Massicot, in his capacity as a member of S&M, commenced the instant action, asserting a personal injury claim, on behalf of Mr. Jones. On or around March 7, 2016, however, Mr. Massicot formally withdrew from his membership in S&M, and Mr. Jones terminated S&M's services as its counsel of record. Thereafter,

on March 17, 2016, JPM was substituted as Mr. Jones' counsel of record. Having withdrawn as counsel of record, S&M filed a motion on March 29, 2016, seeking to intervene in the action for the purpose of asserting its entitlement to any attorney fees payable to plaintiffs' counsel, relative to the claim against Allstate, upon resolution of the lawsuit.

On March 24, 2016, Mr. Jones died. Shortly thereafter, by motion granted on June 7, 2016, Mr. Jones' surviving spouse and three major children (the "Jones plaintiffs"), as the survivors designated by Louisiana Civil Code article 2315.2, were substituted as plaintiffs relative to the personal injury claims Mr. Jones had asserted. See Rec. Doc. 64.[1] At that time, the Jones plaintiffs also formally added Travelers as a defendant, and asserted wrongful death claims, pursuant to Article 2315.2 of the Louisiana Civil Code, against the defendants. *Id.*

On or around May 26, 2016, Allstate deposited $45,739.65 into the Court's registry pending a final determination of to whom the monies were payable, in connection with the plaintiffs' settlement with Allstate as attorney's fees, costs, and/or reimbursable expenses. Although some disagreement exists with respect to the effective date of the Allstate settlement, the settlement agreement between it and the Jones plaintiffs is dated June 2, 2016. On October 6, 2016, Travelers deposited $240,00.00 for the same purpose following execution of its settlement agreement with the Jones plaintiffs on September 8, 2016. *See* Rec. Docs. 120 and 132.

---

[1] Added as plaintiffs in the First Supplemental and Amending Complaint (Rec. Doc. 64) were Cyntrell Jones, in both her capacity as the duly appointed Independent Administratrix of the Estate of Cyril C. Jones and individually, as Mr. Jones' surviving spouse, as well as Cyril C. Jones, Jr., Ayonna Jones, and Dejon Jones. See Rec. Doc. 64.

## ANALYSIS

As previously stated, now before the Court are motions concerning S&M's and JPM's competing claims to the sums deposited into the registry of the Court by Defendants Allstate and Travelers as payment for plaintiffs' attorney fees. Having carefully reviewed the opposing and supporting memoranda, the record in this matter, and applicable law, the Court rules on the motions as follows:

(1) **IT IS ORDERED** that the "Motion of Silvestri & Massicot, LLC to Withdraw Funds in the Registry of the Court" (Rec. Doc. 68), addressing the $45,739.65 deposited by Allstate, is **DENIED WITHOUT PREJUDICE**. Because it is not apparent to the Court that the settlement with Allstate was reached, and effective, prior to Mr. Jones' March 2016 discharge of S&M as his counsel of record in this matter, S&M is not entitled to disbursement of the entirety of the attorney fees and costs arising from the Allstate settlement. Rather, JPM, as successive counsel of record for Mr. Jones, and then for the Jones plaintiffs, is entitled to a portion of that fee.

(2) **IT IS FURTHER ORDERED** that the Jones plaintiffs' "Motion to Dismiss Intervention and to Deny the Motion to Intervene filed by Silvestri & Massicot, LLC" (Rec. Doc. 119) is **DENIED**. Subsequent to the Jones plaintiffs' motion being filed, the Court granted S&M's motion to intervene relative to the Traveler's settlement. See Rec. Docs. 130 and 131. Thus, the Jones plaintiffs' denial request is moot.

Nor will the Court dismiss S&M's interventions simply because Mr. Jones died prior to the Allstate and Travelers settlements. Although a contract for legal services, as a contract of mandate, terminates by operation of law upon the death of the principal, Mr. Jones' death did not automatically deprive S&M of any entitlement to a fee award based on those settlements. Rather, the impact of Mr. Jones' death is that the amounts of the Allstate and Travelers fee awards to which

S&M is entitled are determined based on quantum meruit principles." *See Kinsey v. Dixon*, 467 So. 2d 862, at 864-65 (La. Ct. App. 2 Cir. 1985) ("A contract for legal services is a contract of mandate which is terminated by operation of law upon the death of the principal or mandatary. [] Since the contract is terminated, the cause of action is in quantum meruit rather than in enforcement of the contract."). "The phrase, quantum meruit, means as much as he deserved." *Id.* at 865 (quoting *Smith v. Westside Transit Lines, Inc.*, 313 So.2d 371, 378 (La. App. 4th Cir.), *writ denied*, 318 So. 2d 43 (La. 1975)).

Furthermore, despite the quantum meruit basis of the award, the ultimate amount of fees awarded is not necessarily precluded from being the same maximum amount as the fee provided for in the now terminated contract. *Id.* "On the contrary, 'the discharged attorney . . . may enforce the privilege accorded him by R.S. 37:218 and recover whatever fee he has earned which is not clearly excessive, up to the contractual maximum. . . . .") *Id.* (quoting *Saucier*, 377 So.2d at 117).[2]

---

[2]   In *Saucier v. Hayes Dairy Products, Inc.*, 373 So.2d 102, 118 (La. 1979), the Louisiana Supreme Court, on rehearing, after considering the nature and social utility of the contingency fee contract concluded that "only one contingency fee should be paid by the client" where the attorney is discharged without cause prior to the completion of the service he agreed to perform upon execution of a contingency fee contract. For the court, Justice Calogero explained:

> Considering the peculiar nature of the contingency fee contract, its social importance, and its potential for abuse as well, in light of our duty to enforce the Disciplinary Rules, we conclude that only one contingency fee should be paid by the client[.] [T]he amount of the fee [is] to be determined according to the highest ethical contingency percentage to which the client contractually agreed in any of the contingency fee contracts which he executed. Further, that fee should in turn be allocated between or among the various attorneys involved in handling the claim in question, such fee apportionment to be on the basis of factors set forth in the Code of Professional Responsibility. . . . Thus the fee is to be apportioned according to the respective services and contributions of the attorneys for work performed and other relevant factors.

*Saucier*, 373 So.2d at 118.

As the Fifth Circuit has recognized, a quantum meruit analysis and the application of the *Saucier* factors is essentially the same test. *City of Alexandria v. Brown,* 740 F.3d 339, 352 (5th Cir. 2014). Under either test, "a court is supposed to use the factors articulated by Louisiana Rule of Professional Conduct 1.5(a) to determine the contribution that a lawyer made to his client's case." *Id.* Rule 1.5(a) provides:

---

Thereafter, in *O'Rourke v. Cairns,* 95-3054 (La. 11/25/96), 683 So. 2d 697, 703-04, the Louisiana Supreme Court addressed the fee of an attorney who had been discharged *with cause*, concluding:

> *Saucier* did not alter the rule that counsel discharged for cause are to be compensated on a *quantum meruit* basis. In the situation of counsel dismissed for cause by the client in the contingency fee context, [however,] *quantum meruit* cannot be limited merely to an hourly rate calculation. [] *"[Q]uantum meruit* involves "more than simply the hours spent. . . . It involves the ultimate results obtained as well as the particular benefit to the case derived for each unit of time devoted to the case. *Smith.,* 313 So.2d at 378. A calculation based on hours alone is a bright-line rule which fails to consider the unique character of the contingency fee contract, including risks not encountered in hourly or fixed fee agreements, which Louisiana courts have recognized for many years. Therefore, we find that the lower courts erred in confining the *quantum meruit* analysis only to the actual hours spent by discharged counsel in this case.
>
> * * *
>
> We therefore hold that in cases of discharge with cause of an attorney retained on contingency, the trial court should determine the amount of the fee according to the *Saucier* rule, calculating the highest ethical contingency to which the client contractually agreed in any of the contingency fee contracts executed. The court should then allocate the fee between or among discharged and subsequent counsel based upon the *Saucier* factors. Thereafter, the court should consider the nature and gravity of the cause which contributed to the dismissal and reduce by a percentage amount the portion discharged counsel otherwise would receive after the *Saucier* allocation. This rule serves to confine client exposure to no more than one contingency fee in both with and without cause situations. Furthermore, it allows courts to properly analyze the intricacies which invariably arise in contingency fee litigation, while also taking into consideration the conduct of attorneys which mar the profession and client confidence by requiring dismissal for cause.

> (a) A lawyer shall not make an agreement for, charge, or collect and unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:
>
> > (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> > (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> > (3) the fee customarily charged in the locality for similar legal services;
> > (4) the amount involved and the results obtained;
> > (5) the time limitations imposed by the client or by the circumstances;
> > (6) the nature and length of the professional relationship with the client;
> > (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
> > (8) whether the fee is fixed or contingent.

*See* State Bar Articles of Incorporation, Art. 16, Rules of Prof. Conduct, Rule 1.5, LSA–R.S. foll. 37:222.

On the other hand, the Travelers settlement addressed the wrongful death claims asserted by the Jones plaintiffs, with JPM as their counsel, in addition to the survival action claims. The wrongful death claims did not arise until Mr. Jones' death (which occurred *after* S&M was terminated) and address damages that the Jones plaintiffs, *not* Mr. Jones himself, have suffered as a result of Mr Jones' death. Accordingly, it does not seem to the Court that S&M would be entitled to any portion of the Traveler's fee award that is attributable solely to wrongful death claims. However, a determination of the appropriate apportionment of the fees between the survival action claims and wrongful death claims, as well as between S&M and JPM, utilizing the factors articulated by Louisiana Rule of Professional Conduct 1.5(a), will likewise be necessary.

(3) **IT IS FURTHER ORDERED** that "Plaintiffs' Motion for Summary Judgment on Silvestri & Massicot, LLC Intervention for Attorneys Fees" (Rec. Doc. 134) is **DENIED WITHOUT PREJUDICE**. Given the limited showing made, the Court is presently unable to determine the proper allocation, in accordance with the principles set forth above, of the attorney fees resulting from the Allstate and Travelers settlements.

(4) **IT IS FURTHER ORDERED** that the "Motion of Silvestri & Massicot, LLC for Disbursement of Registry Funds" (Rec. Doc. 144), addressing the $240,000.00 deposited by Travelers, is **DENIED WITHOUT PREJUDICE**. As set forth above, a proper allocation of the fees amongst the various claims, in addition to between counsel, is necessary and cannot be accomplished based solely on the written submissions presently before the Court.

(5) **IT IS FURTHER ORDERED** that the "Plaintiffs' Motion to Disburse Funds in the Registry of the Court" (Rec. Doc. 150), addressing the $45,739.65 deposited by Allstate and the $240,000.00 deposited by Travelers, is **DENIED WITHOUT PREJUDICE**. As set forth above, a proper allocation of the fees amongst the various claims, in addition to between counsel, is necessary and cannot be accomplished based solely on the written submissions presently before the Court.

Given the foregoing rulings regarding the pending motions, **IT IS FINALLY ORDERED**, pursuant to 28 U.S.C. §636, Federal Rule of Civil Procedure 72, and Local Rule 73.3E, that the issue of the proper division of the attorney fees deposited into the registry of the Court by Defendants Allstate ($45,739.65) and Travelers ($240,000.00) be and hereby is referred to the assigned United

States Magistrate Judge for appropriate disposition and, if the matter cannot be resolved amicably by S&M and JPM,[3] preparation of a report and recommendation.

New Orleans, Louisiana, this 5th day of July 2017.

_____
KURT D. ENGELHARDT
UNITED STATES DISTRICT JUDGE

Clerk to Copy:
U.S. Magistrate Judge Knowles

---

[3] The United States Supreme Court and the Fifth Circuit have oft-repeated that a request for attorneys' fees should not spawn major ancillary litigation. *Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983); *Associated Builders & Contractors of La., Inc. v. Orleans Parish School Bd.*, 919 F.2d 374, 379 (5th Cir.1990). It is unfortunate that counsel, former law partners, have thus far not heeded this admonition.